**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER AARON, on behalf of herself and all others similarly situated, | ) | |
| Plaintiff, | ) | Case No. 4:26-cv-1361 |
| v. | ) | **JURY TRIAL DEMANDED** |
| ASCENSION HEALTH ALLIANCE d/b/a ASCENSION | ) | |
| Defendant. | ) | |

**DEFENDANT ASCENSION HEALTH ALLIANCE'S NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that Defendant Ascension Health Alliance d/b/a Ascension ("Ascension"), by and through undersigned counsel, and pursuant to 28 U.S.C. §§ 1441, 1446, and the Class Action Fairness Act of 2005 ("CAFA"), as codified in 28 U.S.C. §§ 1332(d) and 1453, and 28 U.S.C. § 1331, and with full reservation of all defenses, hereby removes the action styled *Jennifer Aaron v. Ascension Health Alliance d/b/a Ascension*, currently pending in the Circuit Court of St. Louis County, Missouri, and assigned Case Number 26SL-CC04265 (the "State Court Action"), from the Circuit Court of St. Louis County, Missouri to the United States District Court for the Eastern District of Missouri, Eastern Division. In support of removal, Ascension states as follows:

**INTRODUCTION**

1. On June 10, 2026, Plaintiff Jennfier Aaron ("Plaintiff"), on behalf of herself and all others allegedly similarly situated, filed a Class Action Petition against Ascension in the State Court Action (the "Petition"). All process, pleadings, and papers filed in the State Court Action, including the Petition and the docket sheet, are attached hereto collectively as **Exhibit A**.

2. Plaintiff alleges Ascension used third-party tracking technologies from outside entities such as Google LLC "to surreptitiously intercept and disclose its patients' and prospective patients' highly sensitive protected health information ("PHI") and personally identifiable information ("PII") to third parties without their informed consent." (*See* **<u>Exhibit A</u>** at Petition, ¶ 1.)

3. Plaintiff alleges Ascension's patients and potential patients can access Ascension's website at https://healthcare.ascension.org/ (the "Website") to view information related to medical conditions and treatments, treating physicians, clinic and hospital locations, and access patient resources including bill pay and the patient portal. (*Id*. at ¶ 5.)

4. Plaintiff goes on to allege Ascension installed and utilized various third-party tracking technologies on its Website, whereby Ascension collected and transmitted personal and sensitive health information pertaining to Plaintiff, other patients, and prospective patients, including information regarding specific medical conditions, treatments, physicians, treating locations, and patient resources such as billing (collectively, "Sensitive Health Information"). (*Id.* at ¶ 7.)

5. Plaintiff alleges Ascension installed these third-party tracking technologies on its Website with the intent of capturing and disclosing Plaintiff's and the putative class members' PHI and PII, including "patient status, health conditions and symptoms, treatments, physicians, patient information, including information related to billing, and unique personal identifiers to link the sensitive web communications[,]" in violation of federal and state law, including the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). (*Id*. at ¶¶ 8-10.)

6. Plaintiff brings multiple causes of action individually and on behalf of a proposed class of all others allegedly similarly situated, defined as "[a]ll natural persons who used the Website, and whose Sensitive Health Information was disclosed or transmitted to Google or any other unauthorized third party." (*Id*. at ¶ 154-55.)

7. Plaintiff alleges she and the class members have suffered numerous injuries, "including (i) invasion of medical privacy; (ii) lack of trust in communicating with medical providers; (iii) emotional distress and heightened concerns related to the release of Sensitive Health Information to third parties; (iv) loss of benefit of the bargain; (v) diminution of value of the Sensitive Health Information; (vi) statutory damages and (vii) continued and ongoing risk to their Sensitive Health Information[,]" allegedly as a result of these third-party tracking technologies. (*Id*. at ¶ 26.)

8. Plaintiff, individually and on behalf of the proposed class, asserts four claims against Ascension: (i) breach of the fiduciary duty of confidentiality; (ii) invasion of privacy—intrusion upon seclusion; (iii) negligence, including negligence *per se* based on HIPAA and the Health Information Technology for Economic and Clinical Health Act; and (iv) unjust enrichment. (*Id*. at ¶ 27.)

9. In Count I, the claim for breach of the fiduciary duty of confidentiality, Plaintiff and the putative class seek compensatory, nominal, and punitive damages, attorneys' fees and costs, and equitable relief enjoining Ascension from allegedly continuing to breach the duty. (*Id*. at ¶ 175.)

10. In Count II for invasion of privacy—intrusion upon seclusion, Plaintiff and the putative class seek damages, including compensatory and nominal damages, to reasonably

compensate Plaintiff and the putative class for the harm to their privacy interests, and punitive damages. (*Id*. at ¶ 184-86.)

11. In Count III, Plaintiff and the putative class assert a claim for negligence, including negligence *per se* under the HIPAA Privacy Rule and HITECH. (*Id*. at ¶¶ 188-196.) Plaintiff and the putative class seek "compensatory, nominal, and/or punitive damages" as well as injunctive relief requiring Ascension to take three actions: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) provide adequate credit monitoring to all class members. (*Id*. at ¶¶ 195-96.)

12. In Count IV, Plaintiff asserts a claim for unjust enrichment seeking equitable disgorgement of profits Ascension allegedly received, or a refund of the amounts Plaintiff and the putative class members allegedly overpaid for Ascension's services. (*Id*. at ¶¶ 197-207.)

13. Ascension denies Plaintiff's allegations and claims, denies any and all allegations of wrongdoing, denies any and all liability to Plaintiff and the putative class, denies that the alleged class can or should be certified, and denies that Plaintiff and the putative class are entitled to any relief whatsoever, including the relief requested in the Petition.

14. Nevertheless, based on the allegations contained in the Petition as pled and the additional allegations herein, and without admitting the validity of any of Plaintiff's allegations or claims, this case is properly removed to this Court under CAFA, because Ascension has satisfied the procedural requirements for removal and Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), and in the alternative under the Embedded Federal Question doctrine.

## REMOVAL IS PROPER

### I. Standard Governing Removal.

15. Defendants may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." *See* 28 U.S.C. § 1441(a). A notice of removal need only provide "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The statute governing the content of a notice of removal, 28 U.S.C. § 1446, "tracks the general pleading requirement stated in [Fed. R. Civ. P.] 8(a)." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014). Accordingly, allegations supporting jurisdiction may be pleaded, and submission of proof is only necessary if the allegations in the notice of removal are contested. *Id.* at 87-88; *see also Leflar v. Target Corp.*, 57 F.4th 600, 605 (8th Cir. 2023) (applying this principle); *Pudlowski v. St. Louis Rams, LLC*, 829 F.3d 963, 965 (8th Cir. 2016) (per curiam) (same).

### II. The Court Has Subject-Matter Jurisdiction Over This Action Pursuant to 28 U.S.C. § 1332(d)(2) Because This is a Class Action Composed of More Than 100 Putative Class Members in Which There is at Least Minimal Diversity Between Members of the Plaintiff Class and Defendant, and the Matter in Controversy Exceeds $5,000,000.

16. Under CAFA, "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2)(A). In addition, there must be 100 or more members in the proposed plaintiff classes. *See* 28 U.S.C. § 1332(d)(5)(B); *see also Dart Cherokee*, 574 U.S. at 84.

17. CAFA thus confers federal jurisdiction over class actions when "1) there is minimal diversity; 2) the proposed class contains at least 100 members; and 3) the amount in controversy

is at least $5 million in the aggregate." *Raskas v. Johnson & Johnson*, 719 F.3d 884, 886 (8th Cir. 2013); *see also* 28 U.S.C. §§ 1332(d)(2)(A), 1332(d)(5)(B). A class action meeting these requirements may be removed to federal court. 28 U.S.C. § 1453(b).

18. This case is removable under CAFA because each of the foregoing requirements are met: (1) this is a "class action" involving more than 100 members; (2) minimal diversity exists between one or more members of the putative plaintiff class and Ascension; and (3) the amount in controversy exceeds $5 million.

**A. This is a class action composed of more than 100 alleged class members.**

19. Plaintiff initiated the State Court Action by filing her Petition asserting claims both individually and on behalf of all others allegedly similarly situated pursuant to Missouri Supreme Court Rules 52.08(b)(2), 52.08(b)(3), and 52.08(c)(4). (**Exhibit A** at Petition, ¶ 154.) Plaintiff seeks to certify a class allegedly defined as "[a]ll natural persons who used the Website, and whose Sensitive Health Information was disclosed or transmitted to Google or any other unauthorized third party." (*Id*. at ¶ 155.)

20. Under CAFA, a "class action" is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Here, Mo. Sup. Ct. R. 52.08 is similar to Fed. R. Civ. P. 23, thus this is a "class action" as defined by CAFA. *See Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017).

21. The alleged class includes more than 100 members. Plaintiff alleges "at least 100—and likely many more—patients and other Website users have been impacted by Defendant's actions." (See **Exhibit A** at Petition, ¶ 158.) Further, as set forth below, many thousands of

individuals accessed Ascension's Website and used one or more of the alleged services thereon, further showing that the alleged class exceeds 100 members.

**B. There is minimal diversity between members of the plaintiff class and Defendant.**

22. For removal under CAFA, only minimal diversity is required, which is present when any member of the plaintiff class and any defendant are citizens of different states. *Westerfield v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010); *see also* 28 U.S.C. § 1332(d)(2)(A).

23. Ascension is a citizen of Missouri because it is a corporation that is incorporated under the laws of the State of Missouri and its principal place of business is located in St. Louis, Missouri. (See **Exhibit A** at Petition, ¶ 29; 28 U.S.C. § 1332(c)(1).)

24. Therefore, so long as one member of the putative class is a citizen of a state other than Missouri, minimal diversity is present. *Westerfield*, 621 F.3d at 822.

25. The alleged class comprises "[a]ll natural persons who used the Website, and whose Sensitive Health Information was disclosed or transmitted to Google or any other unauthorized third party." (**Exhibit A** at Petition, ¶ 155.) Plaintiff alleges that individuals used the Website in various ways that allegedly disclosed or transmitted Sensitive Health Information to Google or other third-parties, including searching for doctors, paying medical bills, and accessing the patient portal. (*See id*. at ¶¶ 78-81, 84-88.) Accordingly, based on Plaintiff's allegations, individuals who used the Website in those ways would be members of the alleged class.

26. Plaintiff alleges "Ascension is one [of] the nation's largest health systems with 94 hospitals that employ 99,000 associates and 23,000 affiliated providers." (*See id*. at ¶ 4.) With a network across 16 states and the District of Columbia, Ascension's health system delivers care to

patients residing in states across the county, including, for example, Florida, Illinois, Indiana, Kansas, Maryland, Oklahoma, Tennessee, Texas, and Wisconsin.[1]

27. Thousands of persons located in each of those states access the Ascension Website to manage their healthcare, including by searching for doctors, paying medical bills, and scheduling appointments in connection with healthcare services provided from hospitals and other locations in those states. Many (if not most) of those individuals reside and are physically present in each of those states, and intend to remain indefinitely, and thus are citizens of those states, including of Florida, Illinois, Indiana, Kansas, Maryland, Oklahoma, Tennessee, Texas, and Wisconsin.

28. Thus, many members of Plaintiff's alleged class are citizens of states other than Missouri, and minimal diversity is therefore present. *See* 28 U.S.C. § 1332(d)(2)(A).

**C. The amount in controversy exceeds $5,000,000.**

29. Although Plaintiff does not allege a specific amount of damages in the Petition, the claims of the individual class members, when aggregated, result in an amount in controversy that exceeds $5 million, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(6).

30. Under CAFA, if the complaint does not directly allege that more than $5 million is in controversy, the notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 983 (8th Cir. 2019). The test is "not whether the damages [sought] *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." *Id*. at 984 (quoting *Hartis v. Chicago Title Ins. Co*., 694 F.3d 935, 944 (8th Cir. 2012) (emphasis in original)).

---

[1] *See, e.g.,* Ascension Homepage, https://healthcare.ascension.org/ (last visited, August 25, 2026); About Ascension, https://about.ascension.org/about-us (last visited, August 25, 2026).

31. "If the class action complaint does not allege that more than $5 million is in controversy, 'a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Id.* at 983 (quoting *Dart Cherokee*, 574 U.S. at 89). Once a defendant explains how the amount in controversy plausibly exceeds $5 million, the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much. *Raskas*, 719 F.3d at 888. "Even if it is highly improbable that the Plaintiffs will recover the amounts Defendants have put into controversy, this does not meet the legally impossible standard." *Id*.

32. Thus, the removing party's burden "is a pleading requirement, not a demand for proof." *Pirozzi*, 938 F.3d at 984 (quoting *Spivey v. Vertrue, Inc*., 528 F.3d 982, 986 (7th Cir. 2008)); *see also Brunts v. Walmart, Inc.*, 68 F.4th 1091, 1094 (8th Cir. 2023) ("The removing party's burden of describing how the controversy exceeds $5 million constitutes a pleading requirement, not a demand for proof. Discovery and trial come later. District courts must accept the allegations in the notice if they are made in good faith.") (internal citation and quotation marks omitted).

33. CAFA provides that the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5 million. *See* 28 U.S.C. § 1332(d)(6). The district court aggregates the claims of all named or unnamed persons who "fall within the definition of the *proposed* or certified class." *Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018) (internal citations omitted) (emphasis in original).

34. Plaintiff seeks numerous categories of damages and relief under the four causes of action, including compensatory damages, nominal damages, punitive damages, and injunctive relief. (See *supra* at ¶¶ 9-12.)

35. Ascension denies the validity and merit of Plaintiff's allegations and alleged claims, the legal theories upon which they are based, that a class can be or should be certified in this litigation, and the requests for monetary, injunctive, and any other relief. Soley for purposes of removal—and while denying that Plaintiff and the alleged class are entitled to any damages or relief whatsoever—the amount in controversy on the aggregated claims of Plaintiff and the alleged class exceed $5 million.

**1. Plaintiff's proposed class.**

36. Plaintiff alleges a class comprising "[a]ll natural persons who used the Website, and whose Sensitive Health Information was disclosed or transmitted to Google or any other unauthorized third party." (**Exhibit A** at Petition, ¶ 155.)

37. Plaintiff identifies multiple different ways in which individuals used the Website that allegedly cause Sensitive Health Information to be transmitted to Google or other third-parties, including paying medical bills, scheduling appointments, accessing the patient portal, and searching for doctors. (*See id.* at ¶¶ 5-8, 21, 78-81, 84-88, 138-141.) Accordingly, individuals who used the Website in those ways are, according to Plaintiff's allegations and alleged class definition, members of the putative class.

38. As of December 31, 2025, there were approximately 589,000 or more distinct Ascension Care IDs, which is an online login credential used to register for various services, including services provided through the Ascension Website. For the one-year period of January 1, 2025 through December 31, 2025, approximately 466,000 or more distinct Ascension Care IDs accessed Ascension One, a page on the Website from which users can manage their healthcare across hospitals and clinics, including by paying medical bills, viewing test and lab results, finding healthcare providers, connecting with those providers, and scheduling and managing

appointments. In addition, during that same period, through Ascension's Website, more than 100,000 appointments were booked, more than 70,000 bill-pay transactions were completed, and more than 2 million doctor searches were conducted.

**2. Requested injunctive relief.**

39. The value of injunctive relief is considered when determining the amount in controversy. *Ahmad v. Panera Bread Co.*, No. 4:21-cv-00311-CDP, 2021 WL 5447000 at *6 (E.D. Mo. Nov. 16, 2021); *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017). Plaintiff alleges that she and the putative class members are entitled to injunctive relief, including an order requiring Ascension to "provide adequate credit monitoring to all Class Members." (See **Exhibit A** at Petition, ¶ 196.)

40. Calculating the cost of that requested injunctive relief—based on advertised monthly prices for credit-monitoring and identity-theft protection services from the three national credit-reporting agencies (Equifax, TransUnion, and Experian), an assumed monitoring period, and the estimated number of class members, as courts have done in similar cases—shows that the amount in controversy readily exceeds CAFA's $5 million threshold.

41. For example, the average advertised price for identity-theft protection and credit-monitoring services from the three main credit-reporting agencies, Equifax, Experian, and TransUnion, is approximately $25 per month.[2] Assuming *arguendo* three months of monitoring at that price, amounting to $75 for each putative class member, and 466,000 or more putative class

[2] The price is $19.95 per month for credit monitoring and identify-theft protection provided by Equifax (*see* https://www.equifax.com/personal/products/credit/monitoring-and-reports/, a copy of which is attached hereto as **Exhibit C**), $24.99 per month for the Premium identity protection plan provided by Experian (https://www.experian.com/protection/compare-identity-theft-products/, a copy of which is attached hereto as **Exhibit D**), and $29.95 per month for Identity Protection, inclusive of credit monitoring, provided by TransUnion (https://www.transunion.com/premium-3-bureau-credit-identity-monitoring, a copy of which is attached hereto as **Exhibit E**).

members, the cost of class-wide monitoring services (approximately $35 million) readily exceeds $5 million. The same is true if the alleged class comprised a narrower subset of the 466,000 persons based on transactions conducted on the Website, such as paying medical bills, searching for doctors, or scheduling appointments. Indeed, the cost of three months of monitoring services for a class of 67,000 (less than the number of bill-pay transactions completed through the Website in just the 2025 calendar year) would exceed the $5 million threshold.

42. The amount in controversy is also readily satisfied using pricing for identity-theft and credit-monitoring services relied upon by courts estimating the amount in controversy for similar types of requested injunctive relief, with pricing ranging from $9.99 per month to $29.95 per month. Using those figures and the same assumed three-month monitoring period likewise results in an amount in controversy that exceeds CAFA's $5 million threshold.

43. Accordingly, the cost of injunctive relief alone satisfies the amount-in-controversy requirement. *See, e.g., Castillo v. Berry Bros Gen. Contractors Inc.*, No. 6:24-cv-01723, 2025 WL 1062091 at *2 (W.D. La. Apr. 8, 2025) (CAFA's $5 million amount-in-controversy requirement satisfied based on estimated cost of providing credit-monitoring services to putative class of 6,210 individuals for ten years at a monthly price of $29.95 per month, as advertised by TransUnion) ("a court recently found that the cost of credit monitoring for the [*sic*] from TransUnion is $29.95 per month. [] This equals $3,594.00 for the requested ten years of credit monitoring from just one service for each member of the prospective class. Plaintiff alleges that 6,210 individuals were affected by the data breach. []. Ten years of credit monitoring from TransUnion for all of these individuals will cost at least $22,318,740.00.") (internal citations omitted); *Morales v. Conifer Revenue Cycle Solutions, LLC*, No. 2:23-cv-01987, 2023 WL 5236729 at *3-4 (C.D. Cal. Aug. 15, 2023) (in putative data-breach class action seeking injunctive relief in the form of credit

monitoring for an alleged class estimated to comprise 120,000 individuals, CAFA's $5 million amount-in-controversy requirement was satisfied based on estimated cost of providing two months of credit-monitoring services to each putative class member, using advertised monthly pricing information for credit-monitoring services provided by both Equifax, at $4.95 for first 30 days and $19.95 per month thereafter, and TransUnion, at $29.95 per month); *Copple v. Arthur J. Gallegher & Co.*, No. C22-0116-LK-SKV, 2022 WL 3357865 at *6-7 (W.D. Wash. Aug. 2, 2022) (estimated amount in controversy of $25 million based on cost of providing three years of credit-monitoring services to a class of 72,385 members at cost of $9.99 per month, using advertised cost of credit monitoring) (defendant "reasonably relies upon advertised rates offered by Equifax, TransUnion, and Experian, the three national credit reporting agencies, to identify the minimum cost for one year of credit and identity theft monitoring services, and reasonably adds one additional year of monitoring beyond the amount Plaintiffs deem insufficient . . . In can be said that, with consideration of credit monitoring alone, Plaintiffs have placed more than $25 million in controversy ($9.99 × 12 months (or $119 a year) × 3 years × 72,385 class members)"; *Porras v. Sprouts Farmers Market, LLC*, No. 5:16-cv-01005-JGB-kk, 2016 WL 4051265 at *3 (C.D. Cal. Jul. 25, 2016) (CAFA's $5 million amount-in-controversy requirement satisfied based on a conversative estimate of three years of monthly credit monitoring at $15.95 a month, using advertised monthly pricing from Equifax, TransUnion, and Experian).

**3. Alleged compensatory damages.**

44. Plaintiff further asserts that the Sensitive Health Information allegedly transmitted has financial value in that "[h]ealthcare brokers charge up to $125 per clinical data record" and can be as high as "$434 per user[.]" (**Exhibit A** at Petition, ¶¶ 101-02.) Plaintiff alleges damages

in the "loss of the benefit of the bargain" and "diminution of value of her PHI and PII." (*Id*. at ¶ 152.)

45. Accordingly, using the alleged $125 charge per record and an estimated class of 466,000 persons, the amount in controversy associated with alleged "loss of the benefit of the bargain" and alleged "diminution of value" of PHI and PII readily exceeds CAFA's $5 million amount-in-controversy requirement. Indeed, at $125 per record, the same would be true for a class of just over 40,000 persons (less than the number of bill-pay transactions completed through the Website in just the 2025 calendar year).

**4. Request for punitive damages.**

46. Plaintiff seeks punitive damages in her Petition (*see supra* at ¶¶ 9-11), thus such damages are included in the amount in controversy. *See Carr v. Dierbergs Markets, Inc*., No. 4:25-cv-00832-JAR, 2026 WL 828813 at *4-6 (E.D. Mo. Mar. 25, 2026).

47. Given the estimated amount of compensatory damages in controversy described above, Plaintiff's request for punitive damages, which can, in theory, be several multiples of awarded compensatory damages, further illustrates that the amount in controversy readily exceeds CAFA's jurisdictional minimum. *See, e.g.,* Mo. Rev. Stat. § 510.265.1 (punitive damages shall not exceed the greater of $500,000 or five times the net judgment awarded against the defendant). Thus, while Ascension denies that Plaintiff and the proposed class are entitled to any relief whatsoever, including punitive damages, the request for punitive damages further satisfies CAFA's amount-in-controversy requirement.

**5. Request for attorneys' fees.**

48. Plaintiff also seeks attorneys' fees in this action. (See **Exhibit A** at Petition, ¶ 175, Prayer for Relief ¶ E.) Attorneys' fees are included in the amount in controversy calculation. *See*

*Faltermeier*, 899 F.3d at 622 (affirming district court's denial of a motion to remand and stating the finder-of-fact may legally conclude the sum of damages and attorneys' fees would exceed $5,000,000).

49. Ascension denies Plaintiff and the proposed class are entitled to any attorneys' fees whatsoever and deny the allegations in Plaintiff's Petition in full. However, an award of attorneys' fees calculated at 25 percent of the estimated alleged compensatory damages further increases the amount in controversy in this action by substantial additional amounts. *See Ahmad*, 2021 WL 5447000 at *7 (analyzing attorneys' fees as to the amount in controversy at a 33% award).

50. Plaintiff's claims for injunctive relief, compensatory and nominal damages, punitive damages, and attorneys' fees all satisfy CAFA's jurisdictional minimum. Thus, CAFA's substantive requirements are satisfied and removal is proper.

**III. This Court Also Has Subject-Matter Jurisdiction Over This Action Pursuant to 28 U.S.C. §§ 1331 and 1441(c) as This Action Arises Under Federal Law.**

51. Any civil action brought in a state court in which the district courts of the United States have original jurisdiction may be removed by the Defendant to the district court of the United States for the district and division embracing the court where the action is pending. 28 U.S.C. § 1441(a). District courts of the United States "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

52. Federal question jurisdiction exists when state-law claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005). The Eighth Circuit has found this test met when "dependence on federal law permeates the allegations

such that the…claims cannot be adjudicated without reliance and explication of federal law." *Wullschelger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020).

53. Here, Plaintiff's Petition, by its own express allegations and citations, relies on multiple federal laws, namely the HIPAA Privacy Rule and the Health Information Technology for Economic and Clinical Health Act ("HITECH"), as a basis for her claims. (See **Exhibit A** at Petition, ¶¶ 25, 27, 105-123.)

54. In paragraph nine of the Petition, Plaintiff alleges:

> Defendant installed the Tracking Tools with the intent to collect and to disclose users' personal health information ***in violation of federal and state laws including, but not limited to, the Health Insurance Portability and Accountability Act of 1996 (42 U.S.C. § 1320d and 45 C.F.R. Part 160-45 C.F.R. Part 162, and 45 C.F.R. Part 164) ("HIPAA")***

(*Id.* at ¶ 9 (emphasis added).)

55. Plaintiff's Petition also expressly includes a claim for negligence *per se* based explicitly on alleged HIPAA and HITECH violations. (*See id*. at ¶¶ 27, 190.) In paragraph 190 of the Petition, Plaintiff alleges:

> By collecting and storing this data, Defendant had a duty of care to use reasonable means to secure and safeguard it from unauthorized disclosure to third parties. ***That duty is defined by, and informed by, the HIPAA Privacy Rule and HITECH (45 C.F.R. § 164.306 et seq.), which establish the federal standard of care for covered entities such as Defendant in their handling of protected health information***. Defendant's failure to comply with those standards is negligence *per se* where it caused Plaintiff's injuries herein.

(*Id.* at ¶ 190 (emphasis added).)

56. Plaintiff's claims thus "cannot be adjudicated without reliance and explication of federal law." *See Wullschelger*, 953 F.3d at 522. For instance, Plaintiff's claims require interpretation and application of HIPAA and its regulations to determine whether, among other issues, the information Plaintiff claims was improperly transmitted to Google or other third parties qualified as PHI and PII, which Ascension denies.

57. As Plaintiff's right to relief, including the claim for negligence *per se*, "necessarily depends on resolution of a substantial question of federal law," this Court has federal question jurisdiction in addition to jurisdiction under CAFA. *See Franchise Tax Bd. Of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 28 (1983); *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 894, 807-808 (1986).

**IV. Ascension Has Satisfied the Procedural Requirements for Removal.**

58. Venue is proper in this Court because Plaintiff originally filed the State Court Action in the Circuit Court of St. Louis County, Missouri, and the United States District Court for the Eastern District of Missouri, Eastern Division is the "district court of the United States for the district and division within which [the State Court Action] is pending[.]" *See* 28 U.S.C. §§ 105(a)(1), 1446(a); E.D. Mo. L.R. 2.07(A)(1).

59. Pursuant to E.D. Mo. L.R. 2.03, Ascension attaches hereto as **Exhibit A** copies of all process, pleadings, orders, and other documents on file in the State Court Action as of the date this Notice of Removal is filed, together with a copy of the State Court Action's docket sheet.

60. Pursuant to 28 U.S.C. § 1446(a), Ascension attaches hereto as **Exhibit B** a copy of all process, pleadings, and orders served upon it in the State Court Action.

61. The thirty-day removal period under 28 U.S.C. § 1446 for removal under CAFA has not commenced because the Petition does not affirmatively and unambiguously allege the total amount of damages being sought, and Ascension has received no other pleading or other paper from Plaintiff that affirmatively and unambiguously discloses the amount of monetary damages sought. *See Gibson v. Clean Harbors Env't Servs., Inc.*, 840 F.3d 515, 519 (8th Cir. 2016) ("[I]n the CAFA context, the thirty-day removal period set forth in § 1446(b)(3) does not begin to run until the defendant receives from the plaintiff an amended pleading, motion, order, or other paper

'from which the defendant can unambiguously ascertain' that the CAFA jurisdictional requirements have been satisfied." (quoting *Graiser v. Visionworks of Am., Inc*., 819 F.3d 277, 285 (6th Cir. 2016))). Accordingly, this Notice of Removal is timely.

62. Alternatively, and without waiving the foregoing, removal is also timely pursuant to 28 U.S.C. § 1446(b) because this Notice of Removal is filed within thirty (30) days from July 27, 2026, the date on which Ascension's counsel received and is deemed served with the Summons and Petition in the State Court Action, as memorialized in the Acknowledgement and Waiver of Service of Process filed in the State Court Action and contained in **Exhibit A** attached hereto.

63. Pursuant to 28 U.S.C. § 1446(d), Ascension, promptly after filing this Notice of Removal, will give written notice of removal to Plaintiff's counsel pursuant to the Certificate of Service appended hereto, and also file a copy of this Notice of Removal with the Clerk of the Circuit Court of St. Louis County, Missouri.

64. Nothing in this Notice of Removal is, constitutes, or shall be construed as, an admission of any allegation in the Petition, or as a waiver of any defense, argument, objection, or principle of law or equity available to Ascension, all of which Ascension expressly reserves.

WHEREFORE, Ascension Health Alliance d/b/a Ascension respectfully removes this action from the Circuit Court of St. Louis County, Missouri, to the United States District Court for the Eastern District of Missouri, Eastern Division, and requests that the Court exercise its subject-matter jurisdiction over this matter and grant such other and further relief to Ascension as is just and proper.

Respectfully submitted,

**LEWIS RICE LLC**

Dated: August 26, 2026

By: /s/ Winthrop B. Reed, III

Winthrop B. Reed, III, #42840MO
R. Taylor Matthews III, #60936MO
Edward T. Pivin, #64086MO
Tyler E. Maetten, #74746MO
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone: (314) 444-7617
Facsimile: (314) 612-7617
wreed@lewisrice.com
tmatthews@lewisrice.com
epivin@lewisrice.com
tmaetten@lewisrice.com

*Attorneys for Defendant Ascension Health Alliance d/b/a Ascension*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and accurate copy of the foregoing pleading was served on all counsel of record via the Court's CM/ECF system and via email on this 26th day of August, 2026.

Brandon M. Wise, #67242MO
Domenica M. Russo, #74819MO
PEIFFER WOLF CARR
KANE CONWAY & WISE, LLP
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
Telephone: (314) 833-4827
bwise@peifferwolf.com
drusso@peifferwolf.com

David S. Almeida (pro hac vice)
Christopher M. Nienhaus (pro hac vice)
ALMEIDA LAW GROUP LLC
849 W. Webster Ave.
Chicago, IL 60614
Telephone: (708) 529-5418
david@almeidalawgroup.com
chris@almeidalawgroup.com

*Attorneys for Plaintiff*

/s/ Winthrop B. Reed, III